1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

10    JOSE HERNANDEZ,                                 1:11-CV-00857 LJO GSA HC

11                        Petitioner,                 FINDINGS AND RECOMMENDATION
                                                      REGARDING PETITION FOR WRIT OF
12          v.                                        HABEAS CORPUS

13    RICK HILL, Warden,

14                        Respondent.
                                        /
15

16          Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

17    pursuant to 28 U.S.C. § 2254.

18                                       **BACKGROUND**

19          Petitioner is currently in the custody of the California Department of Corrections pursuant

20    to a judgment of the Superior Court of California, County of Kern, following his conviction by

21    jury trial on February 23, 2009, of: second degree murder; gross vehicular manslaughter; driving

22    under the influence causing great bodily injury; driving under the influence with a blood-alcohol

23    content over 0.08 percent causing great bodily injury; engaging in a speed contest causing bodily

24    injury; willful cruelty to a child; and driving on a suspended or revoked license with a prior

25    conviction. (CT[1] 693-694, 899.)  The jury also determined that Petitioner had suffered several

26    prior DUI convictions. (CT 713-714.)  On May 12, 2009, Petitioner was sentenced to an

27

28          _____
            [1]"CT" refers to the Clerk's Transcript on Appeal.

                                              1

1   indeterminate prison term of fifteen years to life on the gross vehicular manslaughter count;

2   sentences on all other counts were stayed.  (CT 899.)

3       Petitioner filed a timely notice of appeal.  On July 2, 2010, the California Court of

4   Appeal, Fifth Appellate District ("Fifth DCA"), affirmed the judgment. (See Lodged Doc. No. 4.)

5   Petitioner filed a petition for review in the California Supreme Court.  (See Lodged Doc. No. 5.)

6   On September 15, 2010, the petition was summarily denied.  (See Lodged Doc. No. 6.)

7       On March 10, 2011, Petitioner filed the instant federal habeas petition.  He presents three

8   (3) grounds for relief: 1) The trial court erred in failing to instruct the jury on Cal. Penal Code

9   § 191.5(d); 2) The trial court erred in failing to provide a limiting instruction regarding prior

10  drunk driving convictions; and 3) The evidence was insufficient to prove causation.  On

11  September 16, 2011, Respondent filed an answer to the petition.  Petitioner did not file a

12  traverse.

13                          **STATEMENT OF FACTS**[2]

14      On October 14, 2007, Hernandez headed to the home of Bridget and Ken
    Martinez with his two-year-old daughter, Ciara.[FN2] While there, he drank three or four 24-
15  ounce beers. Everyone left the house about 1:30 p.m. to drive to River Walk Park on
    Stockdale Highway for a child's birthday party. On the way to the park, Hernandez and
16  Ken stopped and purchased more beer.

17          FN2. The record contains two spellings for Hernandez's daughter's name-Ciara
        and Sierra. For purposes of this opinion, we will use the spelling "Ciara."
18
        While at River Walk Park, Hernandez consumed three more beers. Hernandez
19  was stumbling, having trouble walking, and appeared drunk. Bridget offered to drive
    Ciara home because she thought Hernandez was intoxicated. An argument ensued
20  between Hernandez and Bridget, and Hernandez drove off in his sport utility vehicle
    (SUV) with Ciara. As Hernandez drove off, Ciara was not in a car seat and the SUV was
21  hitting the curb. Bridget called 911 to report that Hernandez was "really intoxicated" and
    driving.
22
        Hernandez drove east on Stockdale Highway, where the speed limit is 45 miles
23  per hour. The LeLouis family also was driving east on Stockdale Highway at the same
    time. The LeLouises saw two vehicles, one an SUV, race by them going 80 to 90 miles
24  per hour. The two vehicles sped up and began inching in front of each other, changed
    positions about 10 times, and appeared to be "competing for first."
25
        As the two racing vehicles approached the intersection of Stockdale and Fairway,
26

27      [2]The Fifth DCA's summary of the facts in its July 2, 2010, opinion is presumed correct. 28 U.S.C.
28  §§ 2254(d)(2), (e)(1).  Petitioner does not present clear and convincing evidence to the contrary; thus, the Court
    adopts the factual recitations set forth by the Fifth DCA.

the SUV ran a red light and broadsided a Mercedes traveling through the intersection. Hernandez was driving the SUV.

As a result of the collision, the passenger in the Mercedes, Barbara Blair, died of blunt force injuries. John Blair, the driver of the Mercedes, suffered life-threatening injuries, including two collapsed lungs, multiple rib fractures, and a fractured clavicle. Ciara suffered a deep laceration to her forehead that required two layers of stitches.

When police arrived at the scene, Hernandez had the smell of alcohol on his breath, red watery eyes, and slurred speech. He told officers he had drunk two beers. A blood-alcohol screening showed Hernandez had a 0.195 percent blood-alcohol content. A blood sample was taken and when tested showed a 0.194 blood-alcohol level.

Detective Don Cegielski, a trained accident reconstructionist, was dispatched to the scene of the collision. Cegielski estimated the SUV was traveling at 72.6 miles per hour when it struck the Mercedes. An event recorder retrieved from the SUV showed the SUV had been traveling at 89 miles per hour five seconds prior to the collision. Cegielski opined that the collision was caused by Hernandez's intoxication, his failure to stop for the red light, and the speed of the SUV.

Cegielski interviewed Hernandez. Hernandez told Cegielski he had had two 32-ounce beers before the collision. Hernandez admitted he had prior DUI's (driving under the influence), had a suspended license, and previously had been advised that if he was driving drunk and was in a collision that killed someone, he could be charged with murder. Hernandez admitted he should not have been drinking and driving, but denied he was racing and claimed he was going about 50 miles per hour.

Hernandez was charged with (1) second degree murder, (2) gross vehicular manslaughter with a prior conviction under Vehicle Code section 23152 and former Vehicle Code section 23175, (3) driving under the influence and causing bodily injury, (4) driving with a blood-alcohol content in excess of 0.08 percent and causing bodily injury, (5) engaging in a speed contest and causing bodily injury, (6) causing a child to suffer physical pain or mental suffering, and (7) driving on a suspended or revoked license with a prior conviction under Vehicle Code section 14601.2, subdivision (d)(2).

During the trial, the People introduced evidence of seven prior DUI convictions Hernandez had suffered. Hernandez's probation officer at the time of trial testified that he had told Hernandez that if he drove while under the influence of alcohol and killed someone, he could be charged with murder.

Private investigator Andrew Hanson interviewed Bridget, who denied telling police she saw Hernandez stumbling at River Walk Park. Hanson also interviewed Randy Byrd, whose child's party had been at River Walk Park. Byrd stated he did not see Hernandez drink while at River Walk Park and he did not believe Hernandez was intoxicated.

(See Lodged Doc. No. 4.)

## DISCUSSION

I.   Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody

pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws

or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, n.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  The challenged conviction arises out of Kern County Superior Court, which is located within the jurisdiction of this Court.  28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lockyer v. Andrade, 538 U.S. 63, 70 (2003); Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008 (1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

II.      Standard of Review

Under the AEDPA, relitigation of any claim adjudicated on the merits in state court is barred unless a petitioner can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Harrington v. Richter, __ U.S. __, __, 131 S.Ct 770, 784, 178 L.Ed.2d 624 (2011); Lockyer, 538 U.S. at 70-71; Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles

1   set forth by the Supreme Court at the time the state court renders its decision." Id.  In addition,

2   the Supreme Court decision must "'squarely address [] the issue in th[e] case' or establish a legal

3   principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in

4   . . . recent decisions"; otherwise, there is no clearly established Federal law for purposes of

5   review under AEDPA. Moses v. Payne, 555 F.3d 742, 754 (9th Cir.2009), quoting Wright v. Van

6   Patten, 552 U.S. 120, 125 (2008); see Panetti v. Quarterman, 551 U.S. 930 (2007); Carey v.

7   Musladin, 549 U.S. 70 (2006).  If no clearly established Federal law exists, the inquiry is at an

8   end and the Court must defer to the state court's decision. Carey, 549 U.S. 70; Wright, 552 U.S.

9   at 126; Moses, 555 F.3d at 760.

10       If the Court determines there is governing clearly established Federal law, the Court must

11   then consider whether the state court's decision was "contrary to, or involved an unreasonable

12   application of," [the] clearly established Federal law." Lockyer, 538 U.S. at 72, quoting 28

13   U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if

14   the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

15   question of law or if the state court decides a case differently than [the] Court has on a set of

16   materially indistinguishable facts." Williams, 529 U.S. at 412-13; see also Lockyer, 538 U.S. at

17   72. "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in

18   character or nature,' or 'mutually opposed.'" Williams, 529 U.S. at 405, quoting Webster's Third

19   New International Dictionary 495 (1976). "A state-court decision will certainly be contrary to

20   [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the

21   governing law set forth in [Supreme Court] cases." Id. If the state court decision is "contrary to"

22   clearly established Supreme Court precedent, the state decision is reviewed under the pre-

23   AEDPA de novo standard. Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir.2008) (en banc).

24       "Under the 'reasonable application clause,' a federal habeas court may grant the writ if

25   the state court identifies the correct governing legal principle from [the] Court's decisions but

26   unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

27   "[A] federal court may not issue the writ simply because the court concludes in its independent

28   judgment that the relevant state court decision applied clearly established federal law erroneously

1  or incorrectly.  Rather, that application must also be unreasonable." Id. at 411; see also Lockyer,

2  538 U.S. at 75-76.  The writ may issue only "where there is no possibility fairminded jurists

3  could disagree that the state court's decision conflicts with [the Supreme Court's] precedents."

4  Harrington, 131 S.Ct. at 784.  In other words, so long as fairminded jurists could disagree on the

5  correctness of the state courts decision, the decision cannot be considered unreasonable. Id. If

6  the Court determines that the state court decision is objectively unreasonable, and the error is not

7  structural, habeas relief is nonetheless unavailable unless the error had a substantial and injurious

8  effect on the verdict.  Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

9      Petitioner has the burden of establishing that the decision of the state court is contrary to

10 or involved an unreasonable application of United States Supreme Court precedent. Baylor v.

11 Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the

12 states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a

13 state court decision is objectively unreasonable. See LaJoie v. Thompson, 217 F.3d 663, 669 (9th

14 Cir.2000); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

15     AEDPA requires considerable deference to the state courts. "[R]eview under § 2254(d)(1)

16 is limited to the record that was before the state court that adjudicated the claim on the merits,"

17 and "evidence introduced in federal court has no bearing on 2254(d)(1) review." Cullen v.

18 Pinholster, __ U.S. __, __, 131 S.Ct. 1388, 1398-99 (2011).  "Factual determinations by state

19 courts are presumed correct absent clear and convincing evidence to the contrary." Miller-El v.

20 Cockrell, 537 U.S. 322, 340 (2003), citing 28 U.S.C. § 2254(e)(1).  However, a state court

21 factual finding is not entitled to deference if the relevant state court record is unavailable for the

22 federal court to review. Townsend v. Sain, 372 U.S. 293, 319 (1963), overruled by, Keeney v.

23 Tamayo-Reyes, 504 U.S. 1 (1992).

24 III.   Review of Claims

25     A.  Instructional Error - Cal. Penal Code § 191.5(d)

26     In his first claim for relief, Petitioner alleges the trial court prejudicially erred in failing to

27 properly instruct the jury on Cal. Penal Code § 191.5(d).  He claims his right to jury trial and his

28 due process rights were violated as a result of the trial court's instructional error. Petitioner

6

presented this claim on direct appeal to the Fifth DCA.  It was rejected in a reasoned decision on

July 2, 2010.  (See Lodged Doc. No. 4.)  Petitioner then presented the claim to the California

Supreme Court in a petition for review.  The petition was denied without comment on September

15, 2010.  (See Lodged Doc. No. 6.)  When the California Supreme Court's opinion is summary

in nature, the Court must "look through" that decision to a court below that has issued a reasoned

opinion.  Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n. 3 (1991).  The Fifth DCA analyzed the

claim as follows:

I. Section 191.5 Instructional Error

Section 191.5, subdivision (d) provides, in pertinent part: "A person convicted of violating subdivision (a) who has one or more prior convictions of this section or ... of violating [Vehicle Code] section 23152 punishable under [Vehicle Code] Sections 23540, 23542, 23546, 23549, 23550, or 23552 ... shall be punished by imprisonment in the state prison for a term of 15 years to life." The information alleged in count 2 that Hernandez had violated section 191.5, subdivision (d) in that he previously had been "convicted of driving under [the] influence, w/4 priors, in violation of Vehicle Code [sections] 23152(a)/23175, on or about December 11, 1996, in the Superior Court, County of Kern, California, case # SC068306A." (Capitalization omitted.)

The crux of Hernandez's contention is that the trial court erred prejudicially when it failed to instruct the jury with Judicial Council of California Criminal Jury Instructions (2008) CALCRIM No. 3100 (prior conviction: nonbifurcated trial), and when it instructed with a modified version of CALCRIM No. 590 (gross vehicular manslaughter while intoxicated). Before addressing the instructional error, we must address two preliminary matters concerning the inartful drafting of the charges against Hernandez.

*Preliminary Issues*

First, section 191.5, subdivision (d) is not an offense; it is an enhancement. The very language of this subdivision states that in order for it to apply, a defendant must be convicted of the offense of gross vehicular manslaughter as defined in section 191.5, subdivision (a). Section 191.5, subdivision (d) specifies an increased punishment for the offense of gross vehicular manslaughter if the defendant has suffered the requisite prior conviction. (*People v. Barrett* (2003) 109 Cal.App.4th 437, 439.) Hernandez did not raise any claim of error regarding the pleading in the trial court. Therefore, he has forfeited any claim of error with respect to the charging instrument. (*People v. Howington* (1991) 233 Cal .App.3d 1052, 1058 [failure to demur to pleading error constitutes a forfeiture].)

Second, a Vehicle Code section 23152 conviction does not subject a defendant to increased punishment under Penal Code section 191.5, subdivision (d) unless the prior conviction is punishable under one of the enumerated code sections. (§ 191.5, subd. (d).) The information alleged that Hernandez's 1996 Vehicle Code section 23152 conviction had been punished under former Vehicle Code section 23175, which is *not* one of the enumerated code sections.

Vehicle Code statutes were renumbered, with no substantive changes. (*People v. Superior Court* (*Blanquel* ) (2000) 85 Cal.App.4th 768, 773 (*Blanquel*).) Former Vehicle Code section 23175 was substantially the same as the current Vehicle Code section

7

23550. (*People v. Casillas* (2001) 92 Cal.App.4th 171, 175.) "An offense specified as a prior felony conviction by reference to a specific code section shall include any prior felony conviction under any predecessor statute." (Pen.Code, § 668.5; *Blanquel,* at p. 772, fn. 1.) Hernandez concedes that the reference in the information to former Vehicle Code section 23175 was sufficient to satisfy the Penal Code section 191.5, subdivision (d) charging requirement.

*Error Subject to Watson[FN3] Analysis*

FN3. *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).

Hernandez and the People disagree on the standard of review for the claim of error in instructing the jury on section 191.5, subdivision (d). We have found no published case on point. Hernandez contends the instructional error deprived him of his federal constitutional right to a jury trial and allowed the jury to convict him based upon an incorrect theory, thus the error is analyzed under the standard set forth in *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*). The People argue no constitutional rights are implicated because the right to a jury trial on the truth of a prior conviction is statutory, thus, the error is analyzed under a *Watson* standard.

A. Prior conviction instructional error

Section 191.5, subdivision (g) provides that in order for the penalty specified in section 191.5, subdivision (d) to apply, "the existence of any fact required under subdivision (d) shall be alleged in the information or indictment and either admitted by the defendant in open court or found to be true by the trier of fact." (*Id.,* subd. (g).) Hernandez did not admit the section 191.5 subdivision (d) enhancement.

The trial court has a sua sponte duty to instruct the jury on every element of an enhancement. (*Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 (*Apprendi*).) Failure to instruct on an element of an enhancement merits reversal, unless such error is harmless beyond a reasonable doubt. (*People v. Sengpadychith* (2001) 26 Cal.4th 316, 327 (*Sengpadychith*); *Chapman, supra,* 386 U.S. at p. 24.)

Hernandez claims that *Apprendi* is applicable and therefore the *Chapman* analysis applies. Hernandez is mistaken. In *Apprendi,* the United States Supreme Court held, "*Other than the fact of a prior conviction,* any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi, supra,* 530 U.S. at p. 490, italics added.) The court gave a variety of reasons for the prior conviction exception to the jury trial requirement, including, as our California Supreme Court recently explained in *People v. Nguyen* (2009) 46 Cal.4th 1007, 1011, the following: "[P]rior convictions have been obtained in proceedings which themselves included substantial procedural protections, including proof beyond a reasonable doubt *and the right to a jury trial.* [Citations.]"

The California Supreme Court has held that where the right to a jury trial on a prior conviction derives from statute, and not from the state or federal Constitution, a *Watson* analysis applies to error. (*People v. Epps* (2001) 25 Cal.4th 19, 29 (*Epps*); see also *People v. Garcia* (2003) 107 Cal.App.4th 1159, 1164-1165.) Here, the right to a jury trial derives from statute, specifically section 191.5, subdivision (g).

Hernandez argues, however, that because more than the "bare fact" of a prior conviction was at issue in that the conviction had to be a qualifying conviction, *Apprendi* and *Sengpadychith* require application of a *Chapman* standard. Again, Hernandez is mistaken. As the California Supreme Court stated in *Sengpadychith:*

1

2

3

4

> "This is what *Apprendi* teaches us: Except for sentence enhancement provisions that are based on a defendant's prior conviction, the federal Constitution requires a jury to find, beyond a reasonable doubt, the existence of every element of a sentence enhancement that increases the penalty for a crime." (*Sengpadychith, supra,* 26 Cal.4th at p. 326.)

5

6

7

*Sengpadychith* held that instructional error regarding a sentencing enhancement that was not a prior conviction was subject to *Chapman* analysis. (*Sengpadychith, supra,* 26 Cal.4th at p. 328.) Nothing in either *Apprendi* or *Sengpadychith* dictates the use of a *Chapman* analysis when a prior conviction must be a qualifying prior conviction, as opposed to the bare fact of a prior conviction.

8

9

10

In *Epps, supra,* 25 Cal.4th 19, the California Supreme Court considered the application of *Apprendi* to a determination of whether a prior conviction qualified as a strike under the three strikes law. The *Epps* case held that there was no constitutional right to a jury trial on a prior conviction sentence enhancement allegation and the *Watson* standard was applicable to any error analysis. (*Epps,* at pp. 22, 29.)

11

12

13

14

15

16

In *People v. McGee* (2006) 38 Cal.4th 682 (*McGee*), the California Supreme Court reaffirmed *Epps* and held that no federal constitutional right to a jury trial attaches to sentence enhancements that require an examination of court records pertaining to a defendant's prior conviction to determine the nature or basis of the conviction, such as examining the record of a prior conviction to determine whether that conviction constitutes a qualifying prior for purposes of a recidivist statute. (*McGee,* at p. 709.) In *McGee,* the trial court rejected the defendant's request for a jury trial and reserved for itself the determination of whether an out-of-state conviction legally qualified as a strike under California law. (*Id.* at pp. 688-689.) The trial court submitted to the jury only the narrow question of whether it was the defendant who had suffered the prior conviction. (*Id.* at p. 690 .)

17

18

Even though section 191.5, subdivision (d) requires a determination of whether that prior conviction constitutes a qualifying prior under the statute, which is more than a finding of the bare fact of a prior conviction, Hernandez's federal constitutional rights were not implicated. (*McGee, supra,* 38 Cal.4th at p. 686.)

19

B. Factual/legal invalidity error

20

21

22

23

Hernandez contends that as he had more than one prior DUI conviction, it cannot be determined that the jury based its section 191.5, subdivision (d) verdict on a valid theory because of the instructional errors. Hernandez claims that the modification to CALCRIM No. 590 and the failure to instruct with CALCRIM No. 3100 allowed the jury to convict him for having any prior Vehicle Code section 23152 conviction, not necessarily a qualifying prior. There are three flaws in this reasoning.

24

25

26

27

First, Hernandez does not contend that the jury was misinstructed on the underlying offense of gross vehicular manslaughter, only on the enhancement pertaining to his prior conviction. As we noted earlier in this opinion, section 191.5, subdivision (d) is a sentence enhancement that increases the penalty for the offense of gross vehicular manslaughter when the defendant has a qualifying prior conviction. Section 191.5, subdivision (d) is not the offense; the offense is set forth in section 191.5, subdivision (a). CALCRIM No. 590 instructs on the underlying offense of gross vehicular manslaughter and the challenged modification addressed only the prior conviction.

28

Second, the cases cited by Hernandez to support his premise that it must be

9

1    determined harmless beyond a reasonable doubt that the jury convicted him under a
2    correct legal theory apply to cases addressing the underlying offense and the elements of
     the offense, not the fact of a prior conviction. Hernandez's argument fails to grasp this
3    distinction. (*People v. Chun* (2009) 45 Cal.4th 1172, 1201 [felony-murder rule]; *People v.
     Morgan* (2007) 42 Cal.4th 593, 607-612 [kidnapping]; *People v. Perez* (2005) 35 Cal.4th
4    1219, 1232-1233 [aiding and abetting liability]; *People v. Guiton* (1993) 4 Cal.4th 1116,
     1129 (*Guiton* ) [theory of second degree murder]; *People v. Zacarias* (2007) 157
5    Cal.App.4th 652, 657 [conspiracy].)

6           Third, Hernandez fails to distinguish between instructing the jury on a valid
     theory and one that is factually unsupported. When one of the theories presented to a jury
7    is inadequate, such as a theory that "'fails to come within the statutory definition of the
     crime'" ( *Guiton, supra,* 4 Cal.4th at p. 1128, quoting *Griffin v. United States* (1991) 502
8    U.S. 46, 59), the jury cannot reasonably be expected to divine its inadequacy. The jury
     may render a verdict on the basis of the invalid theory without realizing that, as a matter
9    of law, its factual findings are insufficient to constitute the charged crime. In such
     circumstances, reversal generally is required unless "it is possible to determine from other
10   portions of the verdict that the jury necessarily found the defendant guilty on a proper
     theory." (*Guiton,* at p. 1130.) In contrast, when one of the theories presented to a jury is
11   factually inadequate, such as a theory that, while legally correct, has no application to the
     facts of the case, we apply a different standard. (*Id.,* at pp. 1129-1130.)

12          The section 191.5, subdivision (d) enhancement is a valid enhancement and
     factually supported by one prior offense suffered by Hernandez; his other priors do not
13   factually support the enhancement. Under *Guiton,* such an error was one of state law and
     subject to the traditional *Watson* test. (*Guiton, supra,* 4 Cal.4th at pp. 1129-1130.) In
14   *Sengpadychith,* the California Supreme Court clarified that after *Apprendi,* enhancements
     are treated as the functional equivalent of the offense, and any instructional errors are
15   analyzed under *Chapman, except* for enhancements pertaining to prior convictions.
     (*Sengpadychith, supra,* 26 Cal.4th at pp. 325-326.)

16          Regardless of the nature of the error asserted by Hernandez, misinstruction or
17   invalid theory, the standard of review is a *Watson* error analysis when the error concerns a
     prior conviction sentence enhancement. (*Sengpadychith, supra,* 26 Cal.4th at pp. 325-
18   326; *Guiton, supra,* 4 Cal.4th at pp. 1129-1130.)

19   *Analysis*

20          "Under *Watson,* reversal is required if it is reasonably probable the result would
     have been more favorable to the defendant had the error not occurred. [Citation.]"
21   (*Guiton, supra,* 4 Cal.4th at p. 1130.) Hernandez argues that because seven prior
     convictions for violating Vehicle Code section 23152 were introduced into evidence at
22   trial, there is no way to determine if the jury relied on the correct prior conviction in
     returning its verdict. We agree with the People that it is not reasonably probable
23   Hernandez would have received a more favorable result with a properly instructed jury.

24          As the California Supreme Court stated in *Epps,* the function of a jury in
     determining a prior conviction for sentencing purposes is extremely limited. A trial court
25   may " 'instruct the jury to the effect that the defendant is the person whose name appears
     on the documents admitted to establish the conviction. This procedure would appear to
26   leave the jury little to do except to determine whether those documents are authentic and,
     if so, are sufficient to establish that the convictions the defendant suffered are indeed the
27   ones alleged. Whether this role makes sense is not for us to say. If the Legislature wants
     to provide a greater, or more precisely defined, role for the jury, or chooses to eliminate
28   the jury altogether as many states have done, it may still do so.'" (*Epps, supra,* 25 Cal.4th

at p. 27, italics omitted.)

Despite any instructional errors, the jury was able to perform this limited role. The People introduced into evidence, as exhibits 18A and 34, documentary evidence of the qualifying prior in case No. SC068306A, in the form of the certified "Register of Actions" and the CLETS (California Law Enforcement Telecommunications System). Hernandez did not challenge the authenticity or accuracy of this documentation or submit any rebuttal evidence to refute it. Therefore, the trier of fact may presume the government documentation is truthful and accurate. (*People v. Miles* (2008) 43 Cal.4th 1074, 1083 (*Miles*).)

The verdict form signed by the foreperson of the jury specifically states that the jury found Hernandez guilty of violating "Section 191.5(d) of the Penal Code, as charged in the second count of the Information." The second count of the information specifically alleged the correct qualifying prior as case No. SC068306A.

There was no issue as to whether Hernandez was the person identified in the documentary evidence establishing the qualifying prior. The authenticity of the documents establishing the qualifying prior is presumed and not in dispute. (*Miles, supra,* 43 Cal.4th at p. 1083.) The information specifically stated which prior was the qualifying prior for count 2; and the jury's verdict on count 2 specifically referenced the information and the qualifying prior set forth in the information.

The jury had a very limited role to perform. (*Epps, supra,* 25 Cal.4th at p. 27.) It is not reasonably probable a result more favorable to Hernandez would have been achieved if the jury had been instructed properly.

(See Lodged Doc. No. 4.)

1.  Right to Jury Trial

In Apprendi v. New Jersey, the Supreme Court held that "'any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.'" 530 U.S. 466, 476 (2000), *quoting* Jones v. United States, 526 U.S. 227, 243 n. 6 (1999).  This holding, including the exception for a defendant's criminal history, has been upheld by the Supreme Court in subsequent cases. See James v. United States, 550 U.S. 192, 214 n.8 (2007); Cunningham v. California, 549 U.S. 270, 274-75 (2007); United States v. Booker, 543 U.S. 220, 230-31 (2005); Blakely v. Washington, 542 U.S. 296, 301 (2004).

Petitioner has no constitutional right to a jury trial on the prior conviction allegation.  See United States v. Martin, 278 F.3d 988, 1006 (9th Cir.2002) ("Apprendi expressly excludes recidivism from its scope. Defendant's criminal history need not be proved to a jury beyond a reasonable doubt, [Citations.].") Therefore, the state court correctly concluded that Petitioner was

1   not denied his right to jury trial with respect to a sentencing enhancement based on his prior

2   conviction.

3       2.  Due Process

4       Petitioner also claims the state court erred in its instructions to the jury in violation of his

5   due process rights.  The Supreme Court has held that the fact that an instruction was allegedly

6   incorrect under state law is not a basis for habeas relief. Estelle v. McGuire, 502 U.S. 62, 71

7   (1991), *citing* Marshall v. Lonberger, 459 U.S. 422, 438, n. 6 (1983) ("[T]he Due Process Clause

8   does not permit the federal courts to engage in a finely tuned review of the wisdom of state

9   evidentiary rules").  Federal habeas courts therefore do not grant relief simply because an

10  instruction may have been deficient. Estelle, 502 U.S. at 72.  The only question is "whether the

11  ailing instruction by itself so infected the entire trial that the resulting conviction violates due

12  process." Cupp v. Naughten, 414 U.S. 141, 147 (1973); see also Estelle, 502 U.S. at 72;

13  Henderson v. Kibbe, 431 U.S. 145, 154 (1977); Donnelly v. DeChristoforo, 416 U.S. 637, 643

14  (1974) ("'[I]t must be established not merely that the instruction is undesirable, erroneous, or

15  even "universally condemned," but that it violated some [constitutional right]'"). "It is well

16  established that the instruction 'may not be judged in artificial isolation,' but must be considered

17  in the context of the instructions as a whole and the trial record." Estelle, 502 U.S. at 72, *quoting*

18  Cupp v. Naughten, supra, 414 U.S., at 147. In addition, in reviewing the instruction, the court

19  must inquire "whether there is a reasonable likelihood that the jury has applied the challenged

20  instruction in a way" that violates the Constitution. Boyde v. California, 494 U.S. 370, 380

21  (1990).  Even if constitutional instructional error has occurred, the federal court must still

22  determine whether Petitioner's suffered actual prejudice, that is, whether the error "had

23  substantial and injurious effect or influence in determining the jury's verdict." Brecht v.

24  Abrahamson, 507 U.S. 619, 637 (1993).

25      In this case, the state court determined that federal due process rights were not implicated

26  in the instructions in light of the prior conviction exception in Apprendi.  Basing its analysis on

27  state statute, the state court determined that any error was harmless.  Because the state court

28  interpretation of state law is binding on the federal court, see Oxborrow v. Eikenberry, 877 F.2d

12

1   1395, 1399 (9th Cir.), *cert. denied*, 493 U.S. 942 (1989), habeas relief is unavailable.

2       In any case, even if the alleged instructional error rose to the level of constitutional error,

3   there was no prejudice, because the error did not have substantial or injurious effect on the

4   verdict.  Brecht, 507 U.S. at 637.  As noted by the Fifth DCA, the jury's role in determining the

5   validity of the prior conviction was very limited.  There was no dispute that Petitioner was the

6   person in the documents, and the authenticity of the documents was never disputed.  Since

7   Petitioner cannot demonstrate prejudice, his argument fails.

8       B.   Instructional Error - Limiting Instruction

9       Petitioner next claims the trial court erred in failing to provide a limiting instruction on

10  the use of his prior drunk driving convictions.  This claim was also presented on direct appeal to

11  the Fifth DCA, where it was rejected in a reasoned decision.  (See Lodged Doc. No. 4.)  The

12  claim was then presented to the California Supreme Court in a petition for review, and it was

13  denied without comment.  (See Lodged Doc. No. 6.)  Because the California Supreme Court's

14  opinion was summary, this Court must "look through" that decision to the opinion of the Fifth

15  DCA.  Ylst, 501 U.S. at 804-05 & n. 3.  The claim was analyzed and rejected as follows:

16          Hernandez contends the trial court was required sua sponte to give an instruction
            limiting the use of his prior DUI convictions. The People contend the prior convictions
17          were relevant to the charged offense and, furthermore, any error was harmless. We
            conclude Hernandez has forfeited this issue. We also agree with the People that any error
18          was harmless.

19          *Factual Summary*

20          Prior to trial, the People sought to introduce evidence of Hernandez's multiple
            prior DUI convictions, arguing that the evidence was relevant to prove implied malice.
21          Hernandez objected, claiming the evidence was unduly prejudicial. The trial court ruled
            the evidence was relevant and not unduly inflammatory. The trial court noted that "the
22          evidence of the uncharged prior misconduct is no more inflammatory than the evidence
            that will be offered as to the charged offense."

23
            The trial court went on to state that "a reasonable jury will listen to and be guided
24          by a limiting instruction, which I will give at the time the evidence is offered. [¶] If
            counsel has any suggestion on the limiting instruction, I will consider that. [¶] Otherwise,
25          I will give it sua sponte."

26          Evidence of four prior misdemeanor DUI convictions and three prior felony DUI
            convictions were admitted at trial.
27
            The prosecutor referred to the prior convictions during closing argument, asserting
28          that they showed Hernandez knew the dangers of driving drunk at the time of the

                                                13

accident.

The trial court instructed the jury with CALCRIM No. 303, a general instruction that certain evidence had been admitted for a limited purpose and could be considered only for that purpose. No further instruction or explanation was given regarding the use of the prior convictions.

*Claim of Error is Forfeited*

Hernandez has forfeited any claim of error arising from a failure to give additional limiting instructions. "Although the court must instruct the jury on the general principles of law applicable to a case, this obligation does not extend to instructions limiting the purposes for which particular evidence may be considered. [Citation .]" (*People v. Farley* (1996) 45 Cal.App.4th 1697, 1711; see also *People v. Nudd* (1974) 12 Cal.3d 204, 209; Evid.Code, § 355 .) The obligation to request a limiting instruction applies equally to "evidence of past criminal conduct, either of uncharged criminal activity or of prior convictions. [Citation.]" (*People v. Hawkins* (1995) 10 Cal.4th 920, 942.)

Even when a trial court offers to provide a limiting instruction, but fails to do so, the issue is forfeited in the absence of a request for such an instruction. (*People v. Freeman* (1994) 8 Cal.4th 450, 495.) Here, there is no indication in the record of Hernandez requesting any further limiting instruction, or objecting that the instruction given was inadequate, and he cites no such instance in his briefing on appeal. Therefore, the claim of error is forfeited. (*Ibid.*)

*No Prejudicial Error*

Even if we were to assume that the trial court did err, any such error was plainly nonprejudicial. We assess any error in failing to give a further limiting instruction under the standard set forth in *Watson*. (*People v. Farnam* (2002) 28 Cal.4th 107, 173 (*Farnam*).)

The prior DUI offenses were admissible to show Hernandez's awareness of the risks of drunk driving. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1205-1206.) In *Ochoa*, the defendant was convicted of gross vehicular manslaughter while intoxicated, a violation of section 191.5, subdivision (a). The trial court admitted evidence of the defendant's prior DUI, subsequent probation for that offense, attendance at traffic school, and attendance at an alcohol-awareness class on the dangers of driving drunk. (*Ochoa,* at pp. 1204-1205.) The court in *Ochoa* concluded that the evidence properly was admitted because it was relevant to establishing if the defendant appreciated the risks of drunk driving and acted with a conscious disregard of the consequences, which would be sufficient for a finding of gross negligence, and support a finding of implied malice for murder. (*Ibid.*)

A limiting instruction, such as CALCRIM No. 375, which Hernandez contends should have been given, cautions the jury not to consider the other-crimes evidence, except as that evidence relates to specific issues, such as knowledge, intent, or motive. The defense conceded that the prior DUI's were relevant to a determination of whether Hernandez knew and understood the dangers of drinking and driving.

The risk in not giving a further limiting instruction would be, as defense counsel cautioned, that the jurors might consider the prior DUI's in establishing Hernandez's blood-alcohol level at the time of the current offense. Under the facts of this case, that risk was extremely slight. Evidence of Hernandez's intoxication and blood-alcohol level at the time of the accident was overwhelming. Several witnesses saw him drinking large

quantities of beer before getting behind the wheel of his car. He was stumbling and slurring his speech in the moments before he entered his car. He had a blood-alcohol content of at least 0.19 percent at the time of the collision.

The evidence was relevant to elements of the offenses of gross vehicular manslaughter. (*Ochoa, supra,* 6 Cal.4th at p. 1205.) While the prior DUI's were not admissible to establish that Hernandez was driving while intoxicated at the time of the collision that killed Barbara Blair, evidence of his intoxication at the time of the collision was overwhelming. (*Id.* at p. 1206.) It is not reasonably probable the jury would have reached a result more favorable to Hernandez. (*Farnam, supra,* 28 Cal.4th at p. 173.)

(See Lodged Doc. No. 4.)

### 1. Procedural Default

A federal court will not review a petitioner's claims if the state court has denied relief of those claims pursuant to a state law that is independent of federal law and adequate to support the judgment. Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991); Coleman v. Thompson, 501 U.S. 722, 729-30 (1989); See also, Fox Film Corp. v. Muller, 296 U.S. 207, 210 (1935). A state court's refusal to hear the merits of a claim because of petitioner's failure to follow a state procedural rule is considered a denial of relief on independent and adequate state grounds. Harris v. Reed, 489 U.S. 255, 260-61 (1989). This doctrine of procedural default is based on the concerns of comity and federalism. Coleman, 501 U.S. at 730-32.

There are limitations as to when a federal court should invoke procedural default and refuse to evaluate the merits of a claim because the petitioner violated a state's procedural rules. Procedural default can only block a claim in federal court if the state court "clearly and expressly states that its judgment rests on a state procedural bar." Harris v. Reed, 489 U.S. 255, 263 (1989). For California Supreme Court decisions, this means the Court must specifically have stated that it denied relief on a procedural ground. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991); Acosta-Huerta v. Estelle, 7 F.3d 139, 142 (9th Cir. 1993); Hunter v. Aispuro, 982 F.2d 344, 347-48 (9th Cir. 1991). If the California Supreme Court denies a petitioner's claims without any comment or citation, the federal court must consider that it is a decision on the merits. Hunter v. Aispuro, 982 F.2d at 347-48.

In addition, a federal court may only impose a procedural bar on claims if the procedural rule that the state used to deny relief is "firmly established and regularly followed." O'Dell v.

1   Thompson, 502 U.S. 995, 998 (1991) (statement of Blackmun joined by Stevens and O'Connor

2   respecting the denial of certiorari); Ford v. Georgia, 498 U.S. 411, 423-24 (1991); James v.

3   Kentucky, 466 U.S. 341, 348-51 (1984).  The state procedural rule used must be clear,

4   consistently applied, and well-established at the time of the petitioner's purported default.  Fields

5   v. Calderon, 125 F.3d 757, 760 (9th Cir. 1997); Calderon v. United States Dist. Court (Bean), 96

6   F.3d 112, 129 (9th Cir. 1996), *cert. denied,* 117 S.Ct. 1569.

7        In this case, the appellate court rejected the claim in accordance with California's

8   contemporaneous objection rule, because the defense failed to object to the general limiting

9   instruction and request a more specific instruction.  The Ninth Circuit has noted that California's

10  contemporaneous objection rule is consistently applied independent of federal law. Melendez v.

11  Pliler, 288 F.3d 1120, 1125 (9th Cir.2002); Vansickel v. White, 166 F.3d 953, 957 (9th Cir.1999).

12       If the court finds an independent and adequate state procedural ground, "federal habeas

13  review is barred unless the prisoner can demonstrate cause for the procedural default and actual

14  prejudice, or demonstrate that the failure to consider the claims will result in a fundamental

15  miscarriage of justice."  Noltie v. Peterson, 9 F.3d 802, 804-805 (9th Cir. 1993); Coleman, 501

16  U.S. at 750, 111 S.Ct. 2456; Park, 202 F.3d at 1150. In this case, Petitioner has not shown that

17  any external factor prevented defense counsel from objecting. In addition, Petitioner does not

18  demonstrate actual prejudice resulting from the failure to object.

19       Petitioner has also failed to demonstrate that a fundamental miscarriage of justice will

20  occur if the claim is barred from federal review.  The miscarriage of justice inquiry is governed

21  by the standard set forth in Murray v. Carrier, 477 U.S. 478 (1986). Murray requires a habeas

22  petitioner to show that "a constitutional violation has probably resulted in the conviction of one

23  who is actually innocent." Id. at 496. To satisfy Murray's "actual innocence" standard, a

24  petitioner must show that, in light of new evidence, it is more likely than not that no reasonable

25  juror would have found him guilty beyond a reasonable doubt. Id. Here, Petitioner makes no such

26  showing of actual innocence.

27       Accordingly, Petitioner is procedurally barred from bringing this claim. In any case,

28  Petitioner's claim is without merit.

1    2.  Review of Claim

2       As previously discussed, in reviewing a claim of instructional error, the federal court's

3    only inquiry is "whether the ailing instruction by itself so infected the entire trial that the

4    resulting conviction violates due process." Cupp, 414 U.S. at 147; Estelle, 502 U.S. at 72.  And

5    even if constitutional instructional error has occurred, the federal court must still determine

6    whether Petitioner's suffered actual prejudice, that is, whether the error "had substantial and

7    injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 637.

8       Here, the state court reasonably determined that the failure to provide a specific limiting

9    instruction was harmless.  There is no possibility that a limiting instruction would have changed

10   the outcome.  The defense conceded that evidence of Petitioner's driving under the influence

11   priors could come in to prove he knew and understood the risks of the danger of driving under

12   the influence.  The only risk Petitioner faced by not having the jury read the additional instruction

13   is the possibility the jury might determine Petitioner's blood-alcohol level at the time of the

14   accident.  However, as noted by the appellate court, there was hardly a risk considering the

15   overwhelming evidence of Petitioner's blood-alcohol level.  As noted by Respondent, numerous

16   witnesses saw Petitioner drinking just prior to the incident, Petitioner had a blood-alcohol level

17   of at least .19 immediately after the incident, and moments before the incident witnesses viewed

18   Petitioner driving in a severely impaired state.  A limiting instruction would not have changed

19   the verdict.  The state court rejection of Petitioner's claim was neither contrary to, nor an

20   unreasonable application of, clearly established law.  Petitioner is not entitled to relief on this

21   claim.

22   C.   Insufficiency of the Evidence

23       Finally, Petitioner alleges the evidence was insufficient to establish that the speed contest

24   was a proximate cause of the collision.  This claim was presented on direct appeal to the Fifth

25   DCA where it was rejected in a reasoned decision. (See Lodged Doc. No. 4.)  It was not,

26   however, presented to the California Supreme Court in the petition for review.

27   1.  Failure to Exhaust/Procedural Default

28       Respondent correctly points out that Petitioner's failure to present this claim to the

California Supreme Court requires dismissal for failure to exhaust.  28 U.S.C. § 2254(b)(1); Castille v. Peoples, 489 U.S. 346 (1989).  Respondent asserts that the failure to exhaust cannot now be remedied because the California Supreme Court would reject the claim for failure to follow state procedural rules.  As a result, Respondent argues, the claim is procedurally defaulted and must be dismissed.

Respondent is correct.  Whenever a petitioner fails to properly exhaust a claim in state court, and that claim can no longer be raised because of a failure to follow prescribed state procedure for presenting such issue, the claim is procedurally defaulted.  Murray v. Carrier, 477 U.S. 478, 485 (1986); see also Sandgathe v. Maass, 314 F.3d 371, 375 (9th Cir.2002) (a claim is procedurally defaulted if "it is clear that the state court would hold the claim procedurally barred").  Here, Petitioner failed to follow California procedural rules, specifically Cal. Rules of Court § 8.500(e)(1), which required Petitioner to file a petition for review of the appellate court's decision.  Therefore, the California Supreme Court would reject Petitioner's claim on procedural grounds in the event this Court dismissed the claim as unexhausted and Petitioner returned to state court.  Accordingly, the claim is procedurally defaulted.

2.  Review of Claim

Even if the claim was not procedurally defaulted, it is without merit.  In rejecting the claim, the Fifth DCA stated:

Hernandez contends there was insufficient evidence to sustain his conviction for violating Vehicle Code section 23109.1, subdivision (a) as set forth in count 5. Specifically, he asserts the evidence was insufficient to prove the speed contest was a proximate cause of the collision.

*Standard of Review*

The test of sufficiency of the evidence is whether, reviewing the whole record in the light most favorable to the judgment below, substantial evidence is disclosed such that a reasonable trier of fact could find the essential elements of the crime beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 578 (*Johnson*); see also *Jackson v. Virginia* (1979) 443 U.S. 307, 319.) Substantial evidence is that evidence which is "reasonable, credible, and of solid value." (*Johnson,* at p. 578.) An appellate court must "presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.]" (*People v. Reilly* (1970) 3 Cal.3d 421, 425.) An appellate court must not reweigh the evidence (*People v. Culver* (1973) 10 Cal.3d 542, 548 (*Culver* )), reappraise the credibility of the witnesses, or resolve factual conflicts, as these are functions reserved for the trier of fact (*In re Frederick G.* (1979) 96 Cal.App.3d 353, 367).

Furthermore, an appellate court can reject evidence accepted by the trier of fact only when the evidence is inherently improbable and impossible of belief. (*People v. Maxwell* (1979) 94 Cal.App.3d 562, 577 (*Maxwell*).) "Where the circumstances support the trier of fact's finding of guilt, an appellate court cannot reverse merely because it believes the evidence is reasonably reconciled with the defendant's innocence. [Citations.]" (*People v. Meza* (1995) 38 Cal.App.4th 1741, 1747.)

*Analysis*

Hernandez challenges the sufficiency of the evidence only as it relates to the speed contest being a proximate cause of injury. In order to find him guilty of the count 5 offense, the jury had to find that the speed contest was a substantial factor in causing someone other than Hernandez to suffer injuries. (Veh.Code, § 23109 .1, subd. (b); CALCRIM No. 2201.) The jury also was instructed with CALCRIM No. 240, explaining causation, including the proviso that there may be "more than one cause of injury." The People have the burden of proving proximate cause. (*People v. Caldwell* (1984) 36 Cal.3d 210, 220.)

Here, there was evidence that Hernandez was racing another vehicle on Stockdale Highway, at times reaching speeds of up to 90 miles per hour in a 45-mile-per-hour zone. Cegielski, the expert in accident reconstruction, opined that the collision was caused by Hernandez's intoxication, his failure to stop at a red light, and the speed at which Hernandez was driving.

Hernandez acknowledges there was evidence he and another driver were racing. He contends, however, that there was no evidence the race caused the accident. Hernandez asserts that the collision was the result of "intoxication, the failure to stop at the red light, and the Tahoe's speed."

Hernandez's argument is similar to that made by the defendant in *People v. Kemp* (1957) 150 Cal.App.2d 654 (*Kemp*). In *Kemp,* a death resulted from a collision where two parties had been engaged in a speed contest. Upon entering an intersection, the vehicle not driven by Kemp hit a third car, whose driver died as a result of injuries from the collision. (*Id.* at p. 656.) Kemp asserted that the speed contest was not a proximate cause of the death; excessive speed or reckless driving was the proximate cause of death. (*Id.* at p. 658.) The *Kemp* court noted that there may have been multiple proximate causes and upheld Kemp's manslaughter conviction, concluding that the speed contest was a proximate cause. (*Id.* at pp. 658-659.) *Kemp* was cited with approval in *People v. Sanchez* (2001) 26 Cal.4th 834, 846.

*Tischoff v. Wolfchief* (1971) 16 Cal.App.3d 703 (*Tischoff* ) involved another situation where two cars had been engaged in a speed contest. One of the cars in the contest collided with a third car, and the injured party sought to hold the driver of the noncolliding car liable for injuries. (*Id.* at pp. 706-707.) The appellate court concluded that "the noncolliding car may be found to have been a concurring proximate cause of the accident." (*Id.* at p. 706.)

Hernandez admits he was speeding and engaging in a speed contest. What he essentially asks us to do is reweigh the evidence and reach a different result. This we cannot do. (*Culver, supra,* 10 Cal.3d at p. 548.) There is nothing improbable about the evidence or the inferences the jury reasonably deduced from that evidence that warrants rejecting the jury's decision. (*Maxwell, supra,* 94 Cal.App.3d at p. 577.) In light of the precedent holding that the driver of a noncolliding car in a speed contest has been found liable for injuries under the theory that the speed contest is a proximate cause, as in *Kemp* and *Tischoff,* we decline to conclude as matter of law, which is what Hernandez is asking

us to do, that the driver of the colliding car is not so liable.

        Substantial evidence supported the count 5 conviction. (*Johnson, supra,* 26 Cal.3d at p. 578.)

(See Lodged Doc. No. 4.)

      The law on insufficiency of the evidence claim is clearly established.  The United States Supreme Court has held that when reviewing an insufficiency of the evidence claim, a court must determine whether, viewing the evidence and the inferences to be drawn from it in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  Sufficiency claims are judged by the elements defined by state law.  Id. at 324 n.16.  On federal habeas review, AEDPA requires an additional layer of deference to the state decision.  Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir.2005).  This Court must determine whether the state decision was an unreasonable application of the Jackson standard.

      In this case, the state court reasonably determined that sufficient evidence supported the finding that the speed contest was one of the proximate causes of the collision.  There was evidence that Petitioner was racing another vehicle on Stockdale Highway at speeds up to 90 miles-per-hour in a 45 miles-per-hour zone just prior to the collision.  As to the speed contest being a proximate cause, the state court stated: "There is nothing improbable about the evidence or the inferences the jury reasonably deduced from that evidence that warrants rejecting the jury's decision." (See Lodged Doc. No. 4.)

      Petitioner fails to demonstrate that the state court unreasonably applied Jackson in denying his claim.  The ground must be rejected. 28 U.S.C. § 2254(d).

## RECOMMENDATION

      Accordingly, the Court HEREBY RECOMMENDS that this action be DENIED WITH PREJUDICE.

      This Findings and Recommendation is submitted to the Honorable Lawrence J. O'Neill, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of

California.  Within thirty (30) days after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within fourteen (14) days after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).


    IT IS SO ORDERED.

**Dated:**   **February 29, 2012**                    **/s/ Gary S. Austin**
                                            UNITED STATES MAGISTRATE JUDGE